UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 20, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:   *Walter G. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 21-2400-BAH

Dear Counsel:

On September 18, 2021, Plaintiff Walter G. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 11), the parties' cross-motions for summary judgment (ECFs 14 and 19), and Plaintiff's Reply (ECF 20). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

### I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on November 13, 2018, alleging a disability onset of January 1, 2015. Tr. 197–201.[1] Plaintiff's claims were denied initially and on reconsideration. Tr. 77, 128. On February 12, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 37–64. Following the hearing, on April 9, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12–36. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

### II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] This date was later amended to January 18, 2017. Tr. 41.

[2] 42 U.S.C. §§ 301 et seq.

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 18, 2017, the amended alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of:

> Crohn's disease []; status post resected ascending colon, cecum, and ileocecal valve []; multilevel degenerative disc disease (DDD) and spondylosis []; bipolar disorder []; intermittent explosive disorder []; generalized anxiety disorder []; obesity []; status post laparoscopic stricturoplasty of terminal ileal stricture, appendectomy, and umbilical hernia repair on November 6, 2019 []; and status post appendix cancer removal on November 6, 2019 [].

Tr. 18 (citations to record omitted). The ALJ also determined that Plaintiff suffered from a number of non-severe impairments. Tr. 19.

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 19. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for the following: the claimant can only stand and walk four hours a day; and the claimant is limited to simple, routine, and repetitive tasks." Tr. 23. The ALJ next determined that Plaintiff was unable to perform past relevant work "as a warehouse worker or laborer, stores (medium / unskilled as generally performed) (light / unskilled as actually performed) (Specific Vocational Preparation (SVP) of 2) (Dictionary of Occupational Titles (DOT) # 922.687-058)."[3] Tr. 28. However, the ALJ did find that Plaintiff

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

could perform other jobs that existed in significant numbers in the national economy such as

> a mail sorter (light/unskilled) (Specific Vocational Preparation (SVP) of 2) (Dictionary of Occupational Titles (DOT) # 209.687-026) (approximately 15,000 jobs existing in the national economy); a merchandise marker (light/unskilled) (SVP of 2) (DOT # 209.587-030) (approximately 129,000 jobs existing in the national economy); a photocopy machine operator (light/unskilled) (SVP of 2) (DOT # 207.685-014) (approximately 25,000 jobs existing in the national economy); a document preparer (sedentary/unskilled) (SVP of 2) (DOT # 249.587-018) (approximately 19,000 jobs existing in the national economy); and a press clippings cutter and paster (sedentary/unskilled) (SVP of 2) (DOT # 249.587-014) (approximately 6,600 jobs existing in the national economy).

Tr. 28–29. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 30.

### III. <u>LEGAL STANDARD</u>

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

### IV. <u>ANALYSIS</u>

Plaintiff raises one argument on appeal, specifically that the ALJ erroneously failed to properly evaluate the opinion of examining psychologist Dr. Brittney Elizabeth Ziskind, PhD. ECF 14-1, at 6–12. Plaintiff argues that Dr. Ziskind noted moderate impairments in Plaintiff's ability to "interact with coworkers and the public" and similarly found a moderate impairment in the ability to "complete a normal workday and workweek without interruptions." ECF 14-1, at 7. Dr. Ziskind also determined that Plaintiff has a moderate impairment in the "ability to deal with the usual stress encountered in the workplace, . . . especially if it involves being around other individuals." *Id.* Plaintiff contends that the ALJ erred in rejecting Dr. Ziskind's findings by failing to explain how the ALJ considered the "supportability and consistency" of Dr. Ziskind's opinion. *Id.* at 8 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). Plaintiff finds error in the ALJ's alleged failure to "adequately consider[] the evidence in Dr. Ziskind's opinion that [Plaintiff] could not be expected to sustain work-related mental activities on a regular and continuing basis, 8 hours a day, for 5 days a week, as contemplated in SSR 96-8p." *Id.*

Defendant agrees that Dr. Ziskind found the moderate impairments noted above. ECF 19-1, at 5. However, Defendant notes that Dr. Ziskind failed to "identify how any difficulties translated into specific or quantifiable functional limitations in work settings." *Id.* Defendant further argues that the ALJ properly considered the factors of "supportability and consistency" by

measuring Dr. Ziskind's evaluation against, among other facts in the record, Plaintiff's hearing testimony denying "problems in the past," mental status examinations, and the fact that Plaintiff was able to work part-time during the night and care for his daughter during the day. *Id.* at 5. Defendant concludes by noting that the RFC is an administrative finding, not a medical one, thus the failure to include Dr. Ziskind's limitations in the ALJ's RFC was not an error. *Id.* at 6. Moreover, Defendant contends that the ALJ's decision to omit the "moderate" limitations found by Dr. Ziskind is supported by substantial evidence. *Id.* at 6-7.

"For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision." *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Regarding consistency, the ALJ looks to the degree of consistency between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *see also* 20 C.F.R. § 416.920c(c)(2).[4]

Here, the ALJ correctly summarized Dr. Ziskind's "functional assessment." Tr. 28. Specifically, the ALJ noted the following:

> On June 11, 2019, Dr. Brittney Elizabeth Ziskind, Ph.D., opined the following: the claimant appears to have the ability to reason and understand; he does have some adaptation skills; remote memory is only mildly impaired; recent and immediate memory are only mildly impaired; sustained concentration and persistence are adequate, based on the brief concentration tasks of this evaluation; he does describe difficulty in following through on tasks in his home environment, due to his physical pain, depression, and low motivation; he described significant interpersonal challenges in his personal life and in prior work environments, as a result of his mood; his ability to interact with coworkers and the public is likely moderately impaired; due to his mood symptoms and tendency to isolate himself from others, his ability to maintain regular attendance in the workplace is

---

[4] When there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but . . . not exactly the same," additional factors must be considered by the ALJ. *See* 20 C.F.R. §§ 404.1520c(b)(3)), 416.920c(b)(3). No party points the Court to additional findings or opinions and thus the failure to perform any additional analysis is apparently not at issue here.

> moderately impaired; his ability to complete a normal work day or work week without interruption from mood symptoms is likely moderately impaired; his ability to deal with the usual stress encountered in the workplace is moderately impaired, especially if it involves being around other individuals; and he appears to have some potential physical limitations that would better be assessed by a medical provider.

Tr. 28 (citing Tr. 494–99). However, the ALJ determined that the "social limitations" determined by Dr. Ziskind "are not as severe" as Dr. Ziskind opined. *Id.* This finding is the subject of Plaintiff's appeal.

The ALJ's explanation for not fully adopting Dr. Ziskind's "functional assessment" is relatively short. Tr. 28. As to the "supportability" of Dr. Ziskind's opinion, the ALJ cites to Plaintiff's lack of "problems in the past,"[5] Plaintiff's "mental status exams," the "psychiatric portions of [Plaintiff's] physical examinations," and the lack of "psychiatric hospitalizations or emergency room (ER) visits for [] mental impairments." *Id.* As to the consistency of Dr. Ziskind's opinion as it relates to other evidence in the record, the ALJ noted that Plaintiff's "mental conditions have stabilized/improved overall with fairly conservative treatment, including medications and counseling" and explained that Plaintiff is able to work "part time as an overnight stocker at a grocery store" and cares for Plaintiff's "six-year-old daughter during the day." *Id.*

While the ALJ certainly could have provided additional detail, the ALJ nonetheless provided the required explanation of the "supportability" and "consistency" of Dr. Ziskind's opinion as it relates to other evidence in the record. As to "supportability," the ALJ cited to specific evidence that contradicted Dr. Ziskind's short assessment, and similarly noted that Dr. Ziskind's opinions were not supported by Plaintiff's own testimony that prescriptions "help control [Plaintiff's] symptoms" and that Plaintiff is able to work and care for his child. Tr. 28. The ALJ made similar references while performing the required analysis at step three.[6] *See Britt*, 860 F.

---

[5] I agree with Plaintiff that the ALJ never explicitly used the words "supportability" or "consistency" in the paragraph discussing Dr. Ziskind's assessment. ECF 20, at 2 (citing Tr. 28). However, the ALJ's decision nonetheless explains how the ALJ considered both factors and thus satisfies, albeit barely, the requirements of the relevant regulations. *See* 20 C.F.R. §§ 404.1520c(b)(3)), 416.920c(b)(3).

[6] The ALJ found at step three that Plaintiff had "mild limitations" in "concentration, persistence, and pace," "understanding, remembering, or applying information," and "interacting with others," Tr. 21–22, but did not explicitly address each of these limitations in the residual-functional-capacity analysis. This failure does not run afoul of *Mascio* as "there is no requirement that a finding of 'mild' difficulty in concentration, persistence, or pace must translate to a correlating limitation in the RFC assessment." *Moyers v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-357, 2018 WL 1471459, at *4 (D. Md. Jan. 5, 2018) (citing *Mascio*, 780 F.3d at 638). The ALJ did find a moderate limitation in Plaintiff's ability to "adapt or manage oneself," and similarly did not include a limitation in Plaintiff's RFC to address this issue. However, the propriety of this decision is not before the Court.

App'x at 262 ("The discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the residual-functional-capacity analysis. We can conduct a meaningful review without making an administrative law judge repeat himself."). There may be circumstances where such a short explanation fails to provide substantial evidence sufficient to uphold an ALJ's decision. However, given the nature of Dr. Ziskind's evaluation and the explicit reference to evidence in the record discrediting that assessment, I cannot find that this case falls into that category.

Dr. Ziskind's assessment appears to be based solely on Plaintiff's self-report of symptoms during a June 11, 2019, meeting. Tr. 496 ("Unless otherwise stated, all historical information in this evaluation is based on the claimant's statements during the examination."). No records were reviewed. *Id.* Thus, perhaps understandably, Dr. Ziskind's opinion lacked reference to objective medical evidence and functionally serves as a short summary of Plaintiff's self-reported symptoms. Of course, "disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). However, while Plaintiff, and Dr. Ziskind, are entitled to rely entirely on Plaintiff's interview as the basis for a "functional assessment," it need not be wholly accepted by the ALJ if, as the ALJ found here, it is inconsistent with other evidence. *See Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . [.]").[7] Moreover, Dr. Ziskind presented virtually no explanation for the functional assessment ultimately provided, a fact that weighs against any finding of persuasiveness by the ALJ. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and *supporting explanations* presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be.") (emphasis added)). As such, I find no error in the ALJ's decision to reject subjective statements as inconsistent with other evidence in the record.

Plaintiff appears to concede that the ALJ discussed the "consistency between to restrictions assessed by Dr. Ziskind and other medical evidence in the record," but rejects the ALJ's conclusion and the sufficiency thereof. ECF 14-1, at 10. The ALJ cited to the record evidence and explained why that evidence led the ALJ to conclude that Dr. Ziskind's "functional assessment" was only "somewhat persuasive." Tr. 28. As such, while I may have reached a different determination, I find the explanation to be sufficient because I am not left to "guess" as how the ALJ arrived at the ALJ's conclusion. *Mascio*, 780 F. 3d at 637. As to the ALJ's conclusion itself, Plaintiff's argument amounts to a request to reweigh the evidence, which is not within this Court's purview. *Hays v.*

---

[7] It also bears noting that Dr. Ziskind's findings are often limited by qualifying language, thus further diminishing their persuasiveness. For example, Dr. Ziskind notes that Plaintiff is "*likely* moderately impaired" in several areas, including one key area challenged by Plaintiff, "the ability to complete a normal work day or work week without interruption from mood symptoms." Tr. 499.

*Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Plaintiff also contends that this case resembles *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). I disagree. In *Thomas*, the Fourth Circuit found error, in relevant part, with an ALJ's failure to "draw explicit conclusions about how [a claimant's] mental limitations affect[ed the claimant's] ability to perform job-related tasks for a full workday . . . ." 916 F. 3d at 312. Here, the ALJ cited to ample evidence in the record to support Plaintiff's RFC and sufficiently explained, at multiple steps of the analysis, how the ALJ viewed the evidence related to Plaintiff's mental health and how it affected Plaintiff's RFC. As to the analysis related to Dr. Ziskind's short opinion, I am satisfied that the ALJ considered the factors enumerated in 20 C.F.R. §§ 404.1520c and 416.920c and provided substantial evidence supporting the ALJ's findings. As such, I find no error.

Finally, I note that this case does not present a situation where an ALJ improperly substituted their "own lay opinion for a medical expert's when evaluating the significance of clinical findings." *Arakas*, 983 F.3d at 108 (holding that the ALJ erroneously contradicted a medical source's interpretation of a cervical MRI); *see also Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) ("An ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings."). This Court has applied the prohibition on substituting lay opinion for expert opinion on numerous occasions. *See, e.g.*, *Cynthia C. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-2710, 2021 WL 4342035, at *2 (D. Md. Sept. 22, 2021) (finding that the ALJ improperly "reinterpreted" records that state agency consultants cited in recommending light work and "arrived at a different result based upon her review of Plaintiff's treatment notes and her own belief, apparently, that Plaintiff was able to lift up to 50 pounds despite her medical conditions" such that Plaintiff could perform medium work); *but see Linda H. v. Kijakazi*, No. ADC-21-2945, 2022 WL 2668437, at *6 (D. Md. Jul. 11, 2022) (finding that the ALJ properly considered a medical source opinion by citing specific evidence in the record to show that the opinion was not supported by, nor was consistent with, more persuasive opinions in the record); *Deborah T. v. Kijakazi*, No. BPG-21-858, 2022 WL 1714917, at *2–3 (D. Md. Jan. 14, 2022) (finding that the ALJ did not reinterpret medical imaging, but rather, "objectively and, unlike the ALJ in *Arakas*, did not attempt to draw his own conclusions").

I find that this case is similar to *Linda H.* and *Deborah T.* Here, the ALJ found Dr. Ziskind's opinion "somewhat persuasive" because the ALJ found evidence in the record that contradicted the "social limitations" articulated by Dr. Ziskind. Tr. 28. Far from merely substituting the ALJ's opinion for Dr. Ziskind, the ALJ explained how other evidence in the record objectively discounted Dr. Ziskind's assessment and cited to that evidence. This is the process called for considering opinions noted in 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).

V.   **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 14, is DENIED and Defendant's motion for summary judgment, ECF 19, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

*Walter G. v. Kijakazi*
Civil No. 21-2400-BAH
October 20, 2022
Page 8

    Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

                                           Sincerely,

                                           /s/

                                         Brendan A. Hurson
                                         United States Magistrate Judge

Case 8:21-cv-02400-BAH   Document 21   Filed 10/20/22   Page 8 of 8